AMERICAN NET & TWINE Co. *v.* WORTHINGTON, Collector.

(*Circuit Court, D. Massachusetts.* January 31, 1888.`

CUSTOMS DUTIES—CLASSIFICATION—TWINE.

   The tariff act of third March, 1883, 22 St. 488, Sched. J, § 6, p. 507, subd. 2, as follows: "Seines and seine and gilling twine, twenty-five per centum *ad valorem*," does not refer to linen thread, numbered from 10 to 60, and used by boot and shoe makers, upholsterers, bookbinders, saddlers, and other trades, as well as by gill-net makers; and such thread, though called "gilling twine," is subject to the 40 per cent. rate of the preceding subdivision.

Action to Recover Back Customs Duties.

Plaintiff, the American Net & Twine Company, brought action against Roland Worthington, collector of the port of Boston, for certain duties paid under protest.

   *C. P. Searle*, for plaintiff.

NELSON, J.   This is an action at law by the American Net & Twine Company against the collector of the port of Boston, to recover back duties paid under protest.   By stipulation of the parties the case was heard by the court without a jury.   The question in the case arises under the tariff act of third March, 1883, 22 St. 488.   Schedule J, § 6, p. 507, contains this provision:   (1) "Flax or linen thread, twine, and packthread and all manufactures of flax, or of which flax shall be the component material of chief value, not specially enumerated or provided for in this act, forty per centum *ad valorem.*"   A subsequent paragraph of the same schedule is as follows:   (2) "Seines and seine and gilling twine, twenty-five per centum *ad valorem.*"

The plaintiff corporation, whose business is the manufacture of fishing nets and seines, in the months of February, March, April, and May, 1885, made seven different importations of gilling into the port of Boston, from Liverpool, in all 45 cases.   The merchandise was invoiced and entered at the custom-house as gilling twine.   Upon the appraisement by the custom-house officials here, the merchandise was classified as linen thread, and the collector assessed upon it a duty of 40 per cent. *ad valorem*, under the first clause of Schedule J, above quoted.   The plaintiff in each instance paid the assessed duty under protest claiming that the article was dutiable under the second clause at 25 per cent. *ad valorem* as gilling twine.   Upon appeals to the secretary of the treasury the decisions of the collector were affirmed, and the plaintiff then brought this suit to recover back the alleged excess, which amounted on all the importations to $1,685.85.   All the proceedings in respect to the plaintiff's protests and appeals were regular, and taken in due season, and this suit was commenced within the time limited by law for bringing such suits. The merchandise after its importation was used by the plaintiff in the manufacture of gill-nets, and was imported expressly for that purpose.

The article in question is No. 35 three-cord, unbleached linen thread, of superior quality, put up in half-pound balls, and was manufactured by the Scotch firm of W. & J. Knox at their works in Kilbirnie, Scotland.   For more than 20 years thread of this description has been used by the plaintiff, and other net makers in this country, for the manufacture of gill-nets, principally for the fisheries on the great western lakes, the numbers of the thread used for this purpose ranging from 10 to 60. For many years before the tariff act of 1883 this kind of thread, of the manufacture of W. & J. Knox and other foreign makers, was imported under the name of gilling twine, to be used in making gill-nets, and was invoiced and entered at the custom-house under that name, and was so designated on price-lists and trade-circulars of the foreign makers.   For many years before the act no other imported article was known by the special name of gilling twine.   One of the custom-house officers testified that he never heard or knew of any other imported article that was called gilling twine.

On the other hand, the article is clearly not twine.   It is not suitable for the uses which twine is commonly put to.   It is made of flax from which the gum has been removed by boiling.   It is flexible, without the

stiffness of twine, highly finished, capable of being used for sewing, and is largely used for machine-sewing in many trades. It is not claimed by the plaintiff in this suit that, in a general sense, it is anything else than linen thread, or that it differs in material or quality or mode of manufacture from other similar thread. For many years linen thread of the same kind and quality has been both imported from abroad and made here in large quantities for many other purposes than for gilling. It is used by boot and shoe makers, upholsterers, bookbinders, saddlers, and in many other trades, as sewing-thread. When imported for these purposes, it is invoiced and entered as linen thread, and is so known in commerce and designated on price-lists and trade-circulars. That which is made here for these uses is known only as linen thread. It is also made here for gilling purposes, and in such cases is invariably called "gilling thread," never "gilling twine." Of all that is made here or imported at least nine-tenths, and probably nineteen-twentieths is used for other purposes than as gilling. It also appeared that there is a large, coarse twine made of hemp, which is imported under the name of salmon twine, and is made into nets for gilling salmon. This article seems never to have acquired the name of "gilling twine" in the trade. There is also a cotton gilling twine which is made in this country, but never imported.

It is certainly a matter of no little perplexity, upon the facts before the court, to decide what is meant by the term "gilling twine" in the second paragraph. It is apparent that congress did not intend to let in all unbleached linen thread between the numbers 10 and 60 at the lower duty. Yet that consequence would seem to follow if these importations are to bear only the lower rate. It is not to be supposed, in the absence of express provision to that effect, that it was intended to impose a different duty on the same article according as it was used for one purpose or another, nor is it to be presumed that congress intended to designate the same article by two different names in the same schedule. Nor is there any provision in the act for an entry in bond, such as one would expect to find if the rate of duty was to depend upon the use for which the importation is made. Congress might have provided that linen thread imported and used as gilling should be subject to a lower duty than when intended for other uses, but it has not done so. The general rule in the construction of tariff acts undoubtedly is that words designating commodities as subject to duties, are to be taken in their ordinary commercial sense. But a name acquired by a commodity in one of its minor and subordinate uses ought not necessarily to be taken as its commercial designation, when it has acquired another in its more general and extensive use. The term "gilling twine" can have a sensible meaning by making it apply to salmon twine, which is gilling twine. If the purpose of the framers of the act was to put a lower duty on linen thread used as gilling, as the debates in congress would indicate, they were certainly unfortunate in their selection of words to express the purpose. Taking both paragraphs together, the words "gilling twine" will better bear the construction of being descriptive of a twine made to be used as gilling, such as the salmon twine already alluded to, than as designat-

ing linen thread that may also be used for that purpose. Upon the whole case I am forced to the conclusion, though not without some hesitation and doubt, that the term "gilling twine," in the second paragraph, means twine that is made and used for gilling,—such as salmon twine,—and does not mean linen thread, although one of the minor uses of the latter is for gilling; and that the ruling of the collector was right. Judgment for the defendant.